**SEA–LAND SERVICE, INC., Plaintiff,**

v.

**Elizabeth Hanford DOLE, et al., Defendants.**

**FOSS ALASKA LINE, INC., et al., Plaintiffs,**

v.

**Elizabeth Hanford DOLE, et al., Defendants.**

**Civ. A. Nos. 83–0929, 83–0972.**

United States District Court, District of Columbia.

June 26, 1984.

Edward M. Shea, Francis W. Fraser, James A. Kahl, Ragan & Mason, Washington, D.C., for Sea-Land Service, Inc.

Harold E. Mesirow, Richard D. Gluck, Lillick, McHose & Charles, Washington, D.C., for Foss Alaska Line, Inc. and Western Pioneer, Inc.

Gerry Levenberg, P.C., S. Lynn Sutcliffe, Ellen S. Young, Van Ness, Feldman, Sutcliffe, Curtis & Levenberg, Washington, D.C., for American President Lines, Inc. (intervening defendant).

Alan P. Sherbrooke, Seattle, Wash., Mary A. Sheehan, Washington, D.C., for Totem Ocean Trailer Express, Inc. (plaintiff-intervenor).

John Bayly, Asst. U.S. Atty., Cleveland Thornton, Dept. of Transp., Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

On June 29, 1983, the Court granted summary judgment for the plaintiffs in these consolidated cases and declared an amended order of the Secretary of Transportation to be arbitrary, capricious, an abuse of discretion, and contrary to law. Both the Secretary of Transportation and defendant-intervenor American President Lines, Ltd. ("APL") have moved to alter and/or amend that judgment on various grounds. The motions will be denied in an accompanying order.

At issue is a decision of the Secretary of Transportation authorizing APL to carry certain cargo between Dutch Harbor, Alaska, and Vancouver, British Columbia. The facts have already been summarized in the Court's memorandum of June 29, 1983, which is attached as an exhibit. Nevertheless, the complexity of the legal and factual issues raised in the motions to alter and/or amend warrant a brief restatement.

### I.

As our Court of Appeals has recently noted, Congress has enacted several stat-

utes to protect American competitors in the merchant marine market. *Sea-Land Service, Inc. v. Dole*, 723 F.2d 975, 976 (D.C. Cir.1983). Under the Merchant Marine Act of 1936, ch. 858, 49 Stat. 1985 (codified as amended at 46 U.S.C. §§ 1101–1295g (1976 & Supp. V 1981)), the federal government subsidizes the construction and operation of certain American-flag vessels so they can compete in *foreign* trade with foreign ships whose labor and operating costs are considerably lower. Conversely, the Merchant Marine Act of 1920, ch. 250, 41 Stat. 999 (codified as amended at 46 U.S.C. § 883 (1976 & Supp. V 1981)) (the "Jones Act") protects American competitors in *domestic* trade between points in the United States by excluding foreign vessels from such carriage. A complex regulatory framework has been developed under these statutes not only to protect the American merchant fleet from lower cost foreign competition, but also to protect the unsubsidized domestic American merchant fleet from lower cost subsidized American competition. The latter concern is embodied in Sections 506 and 605(a) of the Merchant Marine Act of 1936, 46 U.S.C. §§ 1156 & 1175(a). Section 605(a) provides that:

> [n]o operating differential subsidy shall be paid for the operation of any vessel on a voyage on which it engages in coastwise or intercoastal trade.

46 U.S.C. § 1175(a). Section 506 requires that owners of subsidized American vessels agree that their ships will be operated exclusively in foreign trade or on a round the world voyage. 46 U.S.C. § 1156.

On January 31, 1983, Secretary of Transportation Drew Lewis issued a brief opinion and order that on its face was inconsistent with the statutory provisions noted above. The order, which reversed a contrary decision of the Maritime Subsidy Board, authorized APL, a subsidized American line, to carry cargo between Dutch Harbor, Alaska, and Vancouver, British Columbia. Under the order, the cargo carried between these ports could originate in or be destined for points in the United States Pacific Northwest ("USPNW"), with connection to Vancouver by rail. It is not contested that all current cargo service between the USPNW and Dutch Harbor and other proximate Aleutian ports is conducted exclusively by unsubsidized American lines such as the plaintiffs in these cases. It is also undisputed that competition by a subsidized American line in the Dutch Harbor-USPNW trade could have a devastating effect on the business of the unsubsidized American carriers.

Faced with this threat by the Secretary's January 31, 1983 decision, plaintiffs petitioned the Secretary for reconsideration, and when no response appeared to be forthcoming, filed these lawsuits.[1] The complaints asserted that the Secretary's January 31, 1983, decision embodied improper interpretations of both APL's Operating Differential Subsidy ("ODS") agreement and the Merchant Marine Act of 1936.

While the suits were pending, but before summary judgment motions became ripe, the new Secretary of Transportation, Elizabeth Dole, issued an opinion and order granting in part and denying in part plaintiffs' motions for reconsideration. Opinion and Order of May 31, 1983. In the January 31, 1983, decision, Secretary Lewis had interpreted a phrase in APL's longstanding ODS agreement which limited APL to "overseas carriage." Although trade between the USPNW and Dutch Harbor via Vancouver would clearly be "coastwise" (i.e., domestic) trade within the meaning of the Merchant Marine Act of 1936, Secretary Lewis concluded that it would also be "overseas" trade within the meaning of the ODS contract because it was "transoceanic carriage ... over the 1700-plus nautical miles between the foreign port of Vancouver and the domestic port of Dutch Harbor." Decision and Order of January 31, 1983, at 3. Secretary Lewis failed to explain, however, how such carriage could be

---

**1.** Plaintiff Sea-Land Service filed its complaint on March 30, 1983. Plaintiff Foss Alaska Line filed its complaint on April 4, 1983.

squared with the Merchant Marine Act of 1936.

Secretary Dole's opinion on reconsideration embraced Secretary Lewis's novel interpretation of the ODS contract, but also added lengthy discussion explaining why carriage of cargo from Dutch Harbor to Vancouver for transshipment to the USPNW would not violate the provisions of the Merchant Marine Act of 1936 that barred subsidized shippers from coastwise trade. In that portion of the May 31, 1983, opinion, Secretary Dole concluded that the term "coastwise trade" in 46 U.S.C. § 1175(a) did indeed mean domestic trade, even though the term "overseas trade" in the ODS agreement did not mean foreign trade. Nevertheless, she concluded that APL could still carry cargo from Dutch Harbor to Vancouver and then transship it by rail to points in the United States. She reasoned that 46 U.S.C. § 1175(a), in barring subsidized shippers from coastwise (i.e., domestic) trade, was really intended by Congress only to bar subsidized shippers from that portion of the domestic market that was protected from foreign competition by the Jones Act, 46 U.S.C. § 883 (1976 & Supp. V 1981). She then interpreted the third proviso of the Jones Act [2] as creating the *possibility* that foreign ships could carry cargo between Dutch Harbor and the USPNW via Vancouver. Opinion and Order of May 31, 1984, at 15. Since foreign shippers might compete in the future with unsubsidized American lines in the Vancouver-Dutch Harbor trade, the Secretary reasoned, subsidized American carriers should be able to compete with unsubsidized American lines on that route as well.

In its memorandum of June 29, 1983, the Court accepted the Secretary's interpretation of the ODS contract, but found the Secretary's interpretation of the Merchant Marine Act of 1936 to be untenable. Although the Secretary's interpretation of the ODS agreement was questionable, it appeared to lie within the limits of the agency's discretion in interpreting documents that it had itself created. Memorandum Opinion of June 29, 1983, at 5. The Secretary's interpretation of the provisions of the Merchant Marine Act of 1936 barring subsidized shippers from coastwise trade, however, were a different matter. Based on a review of the administrative record, the Court found it to be arbitrary, capricious, an abuse of discretion, and contrary to law [3] to interpret a provision barring coastwise trade by subsidized lines such as APL in a way that permitted a subsidized line such as APL to engage in coastwise trade. Such an interpretation, the Court reasoned, flew in the face of the clear statutory intent of 46 U.S.C. § 1175(a), which was to protect unsubsidized lines such as plaintiffs here from competition by subsidized lines such as APL on domestic cargo routes. Memorandum Opinion of June 29, 1983, at 6–7.[4]

## II.

Unfortunately, the Memorandum Opinion of June 29, 1983, appears to have created an unintended ambiguity and to have tabled a related issue that must now be addressed. The ambiguity was created when the Court, after rejecting the Secretary's interpretation of 46 U.S.C. § 1175(a), noted in passing that there was in fact no actual or *potential* foreign competition in the Alaska-USPNW trade. The absence of ac-

**2.** The third proviso states:
That this section shall not apply to merchandise transported between points within the continental United States, including Alaska, over through routes heretofore or hereafter recognized by the Interstate Commerce Commission for which route tariffs have been or shall hereafter be filed with said Commission when such routes are in part over Canadian rail lines and their own or other connecting water facilities.

46 U.S.C. § 883 (1976 & Supp. V 1981).

**3.** *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971); 5 U.S.C. § 706(2)(A).

**4.** This portion of the Court's opinion contained a clerical error that may have caused some confusion. On page 7, the word "also" in the first line should have read "only."

tual foreign competition was undisputed, but the Court noted as well that potential foreign competition was barred because the joint rate tariffs requisite to such competition were non-existent. Memorandum Opinion of June 29, 1983, at 7.

In their motions to alter or amend the Court's judgment, the Secretary and APL have gone to considerable lengths to show that there *is* potential foreign competition in the Dutch Harbor-USPNW trade. Thus, the Secretary has solicited letters from government officials indicating that it is possible that a foreign carrier could press for appropriate joint rate tariffs (although not for the container cargo that apparently predominates the current trade of APL) and might in the future enter the market. *See* United States Motion to Alter or Amend Judgment at 3–7 (filed July 15, 1983).

However tenuous these documents as support for the proposition that there is a realistic threat of foreign competition in the Dutch Harbor-USPNW trade, the Court need not discredit them. They are irrelevant simply because the presence or absence of potential foreign competition is irrelevant to the validity of the Secretary's interpretation of 46 U.S.C. § 1175(a). That interpretation fails on the face of the express statutory provision, which says, and was intended to say, that subsidized American lines shall not compete on coastwise routes (such as that between Dutch Harbor and the USPNW) with unsubsidized domestic carriers. The Court can find nothing in the Jones Act's third proviso or the legislative history of the proviso noted by the Secretary which contradicts this clear command of the Merchant Marine Act of 1936. To the extent the Court, in its June 29, 1983, opinion, noted the weakness of the Secretary's allegations concerning potential foreign competition, it was merely underscoring the faults in the Secretary's position even *assuming* that her interpretation of the Merchant Marine Act of 1936 was correct. Because that interpretation was incorrect, the discussion of foreign competition was not essential to the opinion.

■ In ruling against the Secretary on June 29, 1983, the Court was not unaware of the principle, recently emphasized by our Court of Appeals, that the judiciary's job is not to provide its own original construction of the Secretary's governing statute, but rather to determine whether the Secretary's construction is sufficiently reasonable to be allowed. *Sea-Land Service, Inc. v. Dole, supra,* 723 F.2d at 979. Accepting this standard, the Court has held that when the Congress expressly barred subsidized American vessels from "coastwise" trade, and notably omitted Alaska-USPNW trade from the exceptions, it meant what it said. It did not mean to permit what was expressly barred—coastwise trade by APL between Alaska and the USPNW—merely because another proviso in another statute created the possibility, however remote, of foreign competition on that route. The Court here holds that it is not "sufficiently reasonable" to interpret the statute in a way that ignores the demonstrable, undisputed threat of subsidized competition with unsubsidized lines—a threat that 46 U.S.C. § 1175(a) was expressly intended to disarm—simply because of the somewhat uncertain threat of foreign competition created by the Secretary's as yet untested interpretation of the third proviso of the Jones Act. Accordingly, to the extent the Secretary's opinion and order permit carriage between Dutch Harbor and Vancouver with direct transshipment to or from the USPNW, it is invalid and contrary to law.

When the Court reached this conclusion in the Memorandum Opinion of June 29, 1983, it appeared that no further analysis of the issues presented in the briefs was required. Plaintiffs had advanced several arguments against the Secretary's actions in addition their reliance on 46 U.S.C. § 1175(a), but the Court found it unnecessary to reach them. Memorandum Opinion of June 29, 1983, at 5 n. 2. The Court assumed from the briefs that all carriage by APL between Dutch Harbor and Vancouver would be barred by its interpretation of 46 U.S.C. § 1175(a). The motions to alter or amend the judgment correctly

point out, however, the Court's holding would only bar that portion of APL's Dutch Harbor-Vancouver carriage which originates in or is destined for the lower 48 states without prior interim processing into other products in Canada. Section 605(a) of Merchant Marine Act of 1936, even as interpreted by the Court, does not bar a subsidized shipper from carrying cargo of Canadian origin or destined for Canadian use or consumption between Dutch Harbor and Vancouver, nor does it bar transport of goods that are to be processed into other products in Canada prior to their export to the United States. As the motions to alter and amend indicate that some of APL's anticipated Dutch Harbor-Vancouver cargo falls in these latter categories. Accordingly, the Court must address the plaintiffs' additional arguments which were expressly tabled in the June 29, 1983, memorandum.

### III.

In addition to their other contentions, plaintiffs argue that APL is barred from carrying *any* cargo between Vancouver and Dutch Harbor by the first clause of section 605(c) of the Merchant Marine Act of 1936, 46 U.S.C. § 1175, which provides:

No contract shall be made under this subchapter with respect to a vessel to be operated in an essential service served by citizens of the United States *which would be in addition to the existing service*, or services, unless the Secretary of Transportation shall determine after proper hearing of all parties that the service already provided by vessels of United States registry is inadequate, and that in the accomplishment of the purposes and policy of this chapter additional vessels should be operated thereon; .... [Emphasis added.]

Citing *Sea-Land Service, Inc. v. Connor*, 418 F.2d 1142 (D.C.Cir.1969), plaintiffs contend that carriage between Dutch Harbor and Vancouver would constitute additional subsidized service within the meaning of the first clause of section 605(c). Since no hearing on the adequacy of existing service on that route has been held, plaintiffs rea-

son, the Secretary's decision authorizing subsidized Vancouver-Dutch Harbor carriage must be struck down.

The Secretary and APL counter these arguments by asserting that Vancouver-Dutch Harbor carriage by APL is not "in addition to the existing service" because such carriage is within the scope of APL's current ODS agreement. Thus APL states that

The request for a contract interpretation [by the Secretary that would permit Dutch Harbor-Vancouver service] did not result in a proceeding to approve a "new" or "additional" service to be operated by APL. The *effect* of the Secretary's interpretation is not to authorize a new or additional service because, as the Secretary found, Vancouver-Dutch Harbor service is authorized by APL's contract and in reasonably general accord with service on trade route 29 operated by APL.

APL Memorandum in Support of Motion for Summary Judgment at 57 (filed June 7, 1983).

Secretary Dole's Opinion and Order of May 31, 1983, explains in greater detail why a section 605(c) hearing on Dutch Harbor-Vancouver service by APL is unnecessary. According to the Secretary's interpretation of the ODS agreement, Vancouver-Dutch Harbor service is "overseas" service and thus is authorized by the agreement. Because plaintiffs had an opportunity to challenge APL's "overseas" carriage in a 1967 hearing pursuant to the first clause of section 605(c), and in a 1975 hearing on renewal of the subsidy contract pursuant to the second clause of section 605(c), the Secretary argues that no new hearing can now be required. Opinion and Order of May 31, 1983, at 8–11.

With all due respect to the Secretary's contract interpretation, her conclusion that APL's carriage of cargo between Dutch Harbor and Vancouver would not be "in addition to existing service" is just not sufficiently reasonable to be allowed. It was not until after 1980 that *any* party to this litigation seriously contended that

APL's ODS agreement contemplated trade between Vancouver and Dutch Harbor when it authorized "overseas" carriage. In the more than twenty-five years that APL has operated on trade route 29, it has never carried any cargo between Dutch Harbor and Vancouver. Indeed, various filings by APL in the administrative record indicate that APL itself was aware that its contract and the statute might, under some interpretations, bar such carriage.

▇ Under such circumstances, it was not unreasonable for plaintiffs here to fail to challenge Dutch Harbor-Vancouver service in the earlier hearings. They were faced with a long history in which APL had chosen to carry no cargo between Dutch Harbor and Vancouver, and with a contract that limited APL to overseas carriage. They could reasonably expect that such contract language, combined with the past practice of APL, indicated that Vancouver-Dutch Harbor carriage, with transshipment to the USPNW, was "coastwise" carriage rather "overseas" carriage, and hence would not take place. Now they are suddenly confronted with the Secretary's novel interpretation of the term "overseas" in the ODS agreement, an interpretation which authorized the service they reasonably believed was barred. A due regard to the purposes and policy of the Merchant Marine Act of 1936 requires that they be given an opportunity to show that existing Dutch Harbor-Vancouver service by United States registry vessels is adequate.

Such a holding is also consistent with the statutory requirement of a hearing when service "in addition to the existing service" is proposed. At the outset, it is notable that "the presumption stands in favor of a hearing rather than the other way around," and that "for a hearing to pass muster in this court, it must be impeccably dressed with fairness." *Sea-Land Service, Inc. v. Connor, supra,* 418 F.2d at 1146 & 1149. It cannot seriously be claimed that there has already been a hearing "impeccably dressed with fairness" on APL's proposed Dutch Harbor-Vancouver carriage. At most, there was a hearing on APL's entire trade route 29 service in 1967, at which time it may reasonably have appeared that some Dutch Harbor-Vancouver service was barred. And since that time, the quality and degree of service by unsubsidized vessels of United States registry may well have changed substantially, especially since there has been no subsidized service by APL or anyone else in the interim.

▇ Under such circumstances, the Court concludes that the first subsidized Dutch Harbor-Vancouver service in more than twenty-five years would be "new" and would be "in addition to existing service." *Cf. Sea-Land Service, Inc. v. Connor, supra,* 418 F.2d at 1148. A hearing in accordance with the first clause of section 605(c), followed by the appropriate findings contemplated by that clause, would accordingly be a prerequisite to APL's subsidized Dutch Harbor-Vancouver service. As no such hearing, "impeccably dressed with fairness," has taken place, the Secretary's January 31, 1983, Order, as amended on May 31, 1983, cannot stand. On this separate and distinct ground, as on the grounds discussed in Part II of this memorandum, the motions to alter and/or amend the judgment are denied.

### EXHIBIT A

### MEMORANDUM

This matter is before the Court on the cross-motions for summary judgment filed by defendants and by plaintiffs, who are a number of unsubsidized sea carriers who serve ports in Alaska. Plaintiffs object to a decision by the Secretary of Transportation on January 31, 1983, as clarified on May 31, 1983, that American President Lines, Ltd. (APL) may carry domestic cargo between Dutch Harbor, Alaska and Vancouver, British Columbia.[1] APL has

---

**1.** Specifically, APL ships en route to the United States from the Orient would carry seafood from Dutch Harbor to Vancouver. En route from the United States to the Orient they would carry supplies from Vancouver to Dutch Harbor residents. There would be no bar to tranship-

intervened and has also filed for summary judgment. On June 16, 1983, the Court held a hearing on the various motions for summary judgment. For reasons more fully stated here, the accompanying Order will grant the plaintiffs' motions and deny the motions filed by the Secretary and APL.

The Merchant Marine Act of 1920, generally known as the Jones Act, 46 U.S.C. § 883, and the Merchant Marine Act of 1936, 46 U.S.C. §§ 1156 and 1175(a), specifically restrict the voyages of U.S. flag vessels whose construction and operation are subsidized by the United States. Section 506 of the 1936 Act requires the owner of a subsidized vessel to "agree that the vessel shall be operated exclusively in foreign trade, or on a round the world voyage." 46 U.S.C. § 1156. Section 605(a) of that same Act provides that

> [n]o operating-differential subsidy shall be paid for the operation of any vessel on a voyage on which it engages in coastwise or intercoastal trade.

46 U.S.C. § 1175(a). Both of these provisions exempt from their prohibitions stops at intercoastal ports on round-the-world voyages, voyages from the United States west coast to Europe, and voyages from the United States east coast to the Orient. In addition, subsidized vessels on voyages in foreign trade may stop at the State of Hawaii, or an island possession or island territory of the United States." Stops at Alaska are conspicuously omitted from these exemptions.

The Secretary of Transportation has implemented these and other statutory provisions in an Operating-Differential Subsidy Agreement (MA/MSB–417), which subsidizes APL to permit it to compete effectively in foreign trade. The agreement specifically restricts APL's service at ports in Alaska and British Columbia to "overseas carriage."

On March 9, 1979, and again on April 14, 1982, APL asked the agency to interpret the Agreement so as to permit the carriage

of cargo between Dutch Harbor and Vancouver. The Maritime Subsidy Board (MSB) denied that request, but on January 31, 1983, Secretary Lewis reversed that decision. Secretary Lewis's decision was reaffirmed, with modifications, by Secretary Dole on May 31, 1983.

In deciding to permit APL to carry domestic cargo between Dutch Harbor and Vancouver, the Secretary addressed both the contract and the statutes. The contract phrase "only for overseas carriage" was found to have been "originally intended to preclude short-run 'coasting' from the United States Pacific Northwest and Alaska to British Columbia." Opinion and Order Granting Reconsideration in Part and Denying Reconsideration in Part at 5 (May 31, 1983) (hereinafter "Reconsideration Order). By contrast:

> [T]he long and often difficult carriage over the 1,724 nautical miles between the foreign port of Vancouver and the isolated Aleutian Island port of Dutch Harbor, located on the western extremity of the Gulf of Alaska, constitutes overseas transportation.

*Id.* at 6.

To deal with the statutes barring use of subsidized vessels to transport cargo between U.S. ports, the Secretary invoked the so-called third proviso of the Jones Act. The Jones Act generally limits coastwise transportation of cargo to U.S. flag vessels constructed here and owned by U.S. citizens. The third exemption makes this limitation inapplicable to a voyage by a foreign built or foreign flag vessel carrying to and from a Canadian port cargo that arrived there over Canadian rail lines pursuant to a rail-water rate tariff that has been filed with and accepted by the Interstate Commerce Commission. 46 U.S.C. § 883. The Secretary concluded that voyages and cargoes permissible for foreign flag and foreign built vessels pursuant to the third provision should also be permissible for

---

ment of the seafood overland from Vancouver to U.S. points or to shipments of Dutch Harbor-

bound supplies from the U.S. to Vancouver.

U.S. vessels subsidized by the U.S. As the Secretary put it:

> [W]hen cargo moving between U.S. points is to be carried on a subsidized vessel between one of the U.S. points and an intermediate foreign point in a manner which, if the vessel were foreign, would be compatible with the Jones Act and other coastwise laws, such subsidized carriage would not be prohibited by sections 506 and 605(a).

Reconsideration Order at 14–15. According to the Secretary "the fact that no foreign flag vessels may now be plying the route is irrelevant because the cargoes *can* be carried by foreign vessels." *Id.* at 15 n. 11 (emphasis added).

Plaintiffs have challenged the Secretary's rulings on two principal grounds. Sea-Land focuses its attack primarily on the interpretation of the contract. Foss and Western Pioneer, on the other hand, challenge the Secretary's interpretation of the governing statutes.[2]

Sea-Land challenges the Secretary's interpretation of the term "only for overseas carriage" used in the contracts between the Secretary and APL's predecessors in interest. Sea-Land makes a strong argument that the earlier and authoritative interpretations of the term contemplated voyages to and from Vancouver to the Far East and to and from Dutch Harbor and the Far East, but did not contemplate cargo-carrying voyages between Vancouver and Dutch Harbor. Moreover, Sea-Land makes a strong case for its contention that changes in the service to permit APL's predecessor to move cargo to and from Alaska west of longitude 155 did not convert voyages between Alaska (as redefined) and Vancouver from coastwise to "overseas" carriage.

However, Sea-Land is as familiar as are all these well-represented parties with the familiar litanies about the limits on a court's authority to disturb an administrative agency's interpretation of documents it has itself created. *See, e.g., North Atlantic Westbound Freight Association v. Federal Maritime Commission*, 397 F.2d 683, 685 (D.C.Cir.1968). If, as Sea-Land contends, the bare contract were the only fulcrum for decision here, the Court would defer to the Secretary's interpretation as not so implausible and not such a radical departure from the earlier interpretations as to justify condemnation as arbitrary and capricious. The earlier interpretations relied on by Sea-Land did not turn upon the facts and issues that APL presented to the Secretary here.[3] The Secretary's present interpretation is questionable, but not outrageous. Since the prior interpretations were made in a different context, they do not automatically govern here.

The telling attack upon the Secretary's decision comes from Foss and Western Pioneer. They state a syllogism and present a policy exposition that defendant and APL have failed to meet. These plaintiffs point to the double-barreled effect of sections 506 and 605(a): these statutes both require a U.S. subsidized carrier such as APL to confine itself to foreign trade and prohibit it from operating in the domestic coastwise trade between the Pacific Northwest and Alaska via Vancouver. The third proviso of the Jones Act, which permits a foreign-constructed or a foreign flag vessel to engage in certain coastwise shipping, does not define that service as "foreign trade." Instead, it merely provides an *exception* to the general rule that foreign vessels may also engage in foreign trade. The third proviso is thus irrelevant for the purpose of defining the scope of the "foreign trade" permitted to subsidized U.S. carriers.

---

**2.** Other issues raised include the authority of the Secretary to review and override the decisions adverse to APL made earlier by the Maritime Subsidy Board, the authority of that Board to address a matter allegedly committed to unreviewable direction of the head of the Maritime Administration (now the Assistant Secretary of Transportation), and the failure of the Secretary to afford the plaintiffs a hearing.

Since the statutory issue is decisive, it is unnecessary to address these other issues.

**3.** For example, Sea-Land itself makes much of the fact that APL has never before provided the Vancouver-Dutch Harbor service for which it now seeks authority.

This interpretation of the relevant statutes fulfills the underlying policy purpose anticipated by Congress when it enacted the subsidy program: assisting U.S. vessels in meeting foreign competition. Foss and Western Pioneer demonstrate without contradiction that no foreign vessels now serve the Vancouver-Dutch Harbor route which the Secretary has authorized APL to enter. Even more important, they show that under existing statutes and regulations the joint rate tariffs requisite to foreign ship service coastwise between Vancouver and Dutch Harbor are non-existent. *See American Trucking Associations, Inc. v. ICC,* 656 F.2d 1115 (5th Cir.1981). There is no realistic possibility that any foreign carrier could qualify for such service. According to the Secretary:

> The fact that no foreign flag vessels may now be plying the route is irrelevant because the cargoes can be carried by foreign vessels; the Act requires no more.

Reconsideration Order at 15 n. 11. This is a plain error of law.

The overriding purpose of the entire U.S. ship subsidy program is to meet foreign competition in U.S. foreign commerce. *See* 46 U.S.C. 1244(a). As the D.C. Circuit has stated:

> The Act and its history make it clear that the operating subsidy established by 46 U.S.C. § 1171 was intended by Congress to be paid in order to meet foreign competition. It does not appear that Congress intended that the subsidy would compensate shippers which had no actual or potential competition from foreign lines.

*State Marine International, Inc. v. Peterson,* 518 F.2d 1070, 1077 (D.C.Cir.1975). The Secretary has not found that there is actual or potential competition from foreign lines that would justify sanctioning what is plainly coastwise service between Vancouver and Dutch Harbor by a subsidized U.S. carrier such as APL. Accordingly, the accompanying Order will declare that the decision of the Secretary authorizing APL to serve between Vancouver and

Dutch Harbor is arbitrary and capricious, an abuse of discretion, and contrary to law. 5 U.S.C. § 706(2)(A).

/s/LOUIS F. OBERDORFER
UNITED STATES
DISTRICT JUDGE

Date: June 29, 1983